## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEPHAN ZOURAS LLP,**<br>**Plaintiff,**<br>**v.**<br><br>**THOMAS MORE MARRONE**<br>**and MOREMARRONE LLC,**<br>**Defendants.** | Case No. _____ |

## COMPLAINT

Stephan Zouras, LLP ("Stephan Zouras" or "Plaintiff") hereby makes the following allegations against Thomas More Marrone ("Marrone") and MoreMarrone LLC ("MoreMarrone"):

## THE PARTIES

1.      Plaintiff is a nationally-recognized class action law firm with a principal place of business in Chicago, IL.  Plaintiff's attorneys concentrate in the litigation of complex civil actions on behalf of plaintiffs, including class and collective wage and hour actions.

2.      Defendant Marrone is an adult citizen of Philadelphia, PA and an attorney admitted to practice law in the Commonwealth of Pennsylvania.

3.      Defendant MoreMarrone is a law firm with a principal place of business in Philadelphia, PA and is owned and operated by Marrone, the firm's only attorney.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action under 28 U.S.C.A. § 1332, in that no Plaintiff shares a state of citizenship with any Defendant (*i.e.,* Plaintiff is a citizen of Illinois and Defendants are citizens of Pennsylvania) and the amount in controversy exceeds $75,000.00.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claim occurred in this District.

## OPERATIVE FACTS

6.     This action flows from Marrone's wrongful taking, possession and use of the property of Stephan Zouras; namely its court-awarded share of the attorneys' fees generated from the successful prosecution of a lawsuit captioned *Smiley v. E.I. Du Pont De Nemours and Company,* M.D. Pa. Case No. 12-cv-2380-MEM ("*Smiley*"), an FLSA collective / Rule 23 WPCL class action for unpaid shift relief and donning and doffing work.

7.     On November 28, 2012, Marrone filed *Smiley* with another Philadelphia law firm, Greenblatt, Pierce, Funt & Flores ("GPFF").

8.     On November 5, 2014, the court granted the defendants' motions for summary judgment. The Third Circuit Court of Appeals reversed on appeal and, on

June 28, 2018, the U.S. Supreme Court denied *certiorari*.  On July 19, 2018, this Court lifted the litigation stay imposed for these appeals.

9.     In July 2018, the parties began to explore settlement and the defendants began negotiating a production of damages discovery for the nine-year / 536-person *Smiley* class to inform settlement discussions.

10.     Around this time, a dispute arose between Marrone and GPFF that led GPFF to withdraw from *Smiley* on August 8, 2018.

11.     Up until this time, GPFF and an expert it retained had been solely responsible for plaintiffs' damages analysis in *Smiley*.

12.     After GPFF withdrew from *Smiley*, Marrone was left without any knowledge or understanding of what damages data had already been produced or was still needed, what damages analysis had already been done or what it showed, what assumptions would be needed to create a legally and factually viable damages model, what positions the defendants would likely take in response to those assumptions, or how to construct a credible damages model (among other things) that passed muster under the governing legal standards, and in general lacked the resources, staff or experience to process or review defendants' upcoming production.

13.     To prevent his lack of knowledge and inexperience with complex wage actions from derailing settlement negotiations, Marrone, individually and as authorized agent for MoreMarrone, contacted David Cohen ("Cohen"), an

3

experienced wage class and collective action litigator at Stephan Zouras, and invited him to "team-up" as co-class counsel on *Smiley*.

14.    Stephan Zouras and Marrone agreed that Stephan Zouras would participate in *Smiley* as co-class counsel, provide representation on a contingent basis, keep a contemporaneous record of its time and, upon any favorable resolution, seek a reasonable attorney's fee award from the Court corresponding to its time and contributions to the case.  With respect to the sharing of fees and costs, Marrone expressly stated his intention that Stephan Zouras' involvement would "be as favorable to [it] as possible" and "present the most favorable scenario for [it]," necessarily meaning that, Stephan Zouras would receive at least a *pro rata* share of any fee awarded.  *See* July 26, 2018 Marrone E-Mail (Exhibit A).

15.    From September 2018 to December 11, 2019, Stephan Zouras, among other things, undertook professional responsibility for prosecuting *Smiley* on behalf of the class, worked to review the Class members' time and pay data, perform class-wide damage calculations, confer with defense counsel on damage issues, draft Plaintiffs' settlement demands and engage in settlement negotiations with defense counsel, all of which led directly to the successful resolution of *Smiley*.

16.    The most significant of Stephan Zouras' contributions to *Smiley* occurred during a September 20, 2019 meeting of all counsel on damages issues. Defense counsel began the meeting by presenting their damages analysis, based on

a 2014 report by Plaintiffs' damages expert, supporting total damages of $830,000.00 which, they suggested, meant plaintiffs' claims should settle for approximately $400,000.00 – a claim Marrone lacked the knowledge, experience or expertise to refute.

17.    During this meeting, Cohen de-constructed Defendants' damage analysis, found the key, mistaken assumption underlying Defendants' analysis, convinced defense counsel this assumption was legally and factually wrong, and that Plaintiffs' claims could be worth as much as $9,500,000.00.

18.    On December 11, 2019, the Parties participated in a mediation and, relying on assumptions and calculations Cohen presented at the September 20, 2019 meeting, reached an agreement in principle to settle *Smiley* for $5,000.000.00.

19.    From December 12, 2019 through October 2, 2020, Stephan Zouras worked to draft the settlement agreement, construct a settlement notice and claims process and prepare the preliminary and final approval motions and all related submissions in *Smiley*.

20.    During this time, GPFF filed a motion to intervene in *Smiley* to enforce a claimed lien for attorney's fees and costs against Marrone.  The *Smiley* court denied GPFF's motion to intervene on September 21, 2020.  Foreshadowing future events, GPFF sued Marrone and MoreMarrone in Pennsylvania state court on September

24, 2020, claiming attorney's fees and costs flowing from its participation in *Smiley* which, according to GPFF, Marrone had improperly converted.

21.     As the due date for the *Smiley* final approval filing neared, Stephan Zouras prepared a declaration supporting a $336,277.50 lodestar/fee request and Marrone prepared a declaration supporting a $691,560.00 lodestar/fee request. Stephan Zouras and Marrone agreed that they would ask the court to approve a 1.95x multiplier on their combined $1,027,837.50 lodestar, providing a $2,000,000.00 fee.

22.     On September 22, 2020, the *Smiley* court presided over a final approval hearing led by Cohen.  During this hearing, the court indicated it would approve a $1,750,000.00 attorney's fee that would provide Stephan Zouras and Marrone with a 1.7x multiplier on their combined lodestar.

23.     On October 2, 2020, the *Smiley* court entered an Order approving a $1,750,000.00 attorney's fee.

24.     That same day, Stephan Zouras contacted Marrone to advise of the due date for the *Smiley* settlement payments and confirm Marrone's intention with respect to the fee distribution.

25.     Between October 2, 2020 and October 4, 2020, Marrone sent several e-mails claiming, for the first time, that he: (1) had unilateral authority to allocate (or re-allocate) the Court-awarded fee, including lodestar and multiplier awards; (2) had unilateral authority to set Stephan Zouras' fee at any amount he chose, including at

6

$0; and, (3) intended to use Stephan Zouras' court-awarded attorneys' fees to pay his own debts, namely the fees and costs of his defense of GPFF's lawsuit and whatever damages he may ultimately be ordered to pay GPFF. *See* October 2018 Marrone E-Mails (Exhibit B).

26.     On October 8, 2020, Stephan Zouras filed a letter asking the *Smiley* court to schedule a phone conference with Plaintiffs' counsel.

27.     Marrone responded with a letter advising the court that the plaintiffs' attorneys were involved in a fee dispute that did not impact the settlement distribution and urging it not to schedule a conference.

28.     On October 9, 2020, the *Smiley* court entered an Order declining to involve itself in a fee dispute that did not impact the settlement distribution.

29.     Emboldened by the court's reluctance to address his actions relating to the *Smiley* fee award, Marrone contacted the settlement administrator ("Analytics"), ordered it to send him the $322,816.14 fee and cost payment made by one *Smiley* defendant (Adecco) and repeatedly threatened legal action for any failure to comply. Declaration of Richard Simmons ("Simmons Dec."), ¶¶5-9 (Exhibit C). Shortly thereafter, Marrone again contacted Analytics to demand payment of the $1,470,606.90 fee and cost payment made by the second *Smiley* defendant (DuPont), again threatening legal action for any failure to comply. *Id.* at ¶10-15 (Exhibit C).

30.    Concerned about making the payments Marrone demanded as purported "lead counsel," Analytics reviewed the *Smiley* class notice, settlement agreement, conditional certification order and settlement approval order, correctly recognized that they all identified both Marrone and Stephan Zouras as class counsel, did not identify Marrone as "lead counsel" and held the remaining fee and cost amounts in escrow pending joint distribution instructions or a court order. *Id.* at ¶¶14-15 (Exhibit C).

31.    On October 23, 2020, Marrone filed a motion for distribution in *Smiley*, seeking an order that required Analytics to pay all of the escrowed fee and cost funds to him.

32.    On November 6, 2020, Stephan Zouras responded, seeking an order that provided for a *pro rata* allocation of the attorney's fee award between Marrone and Stephan Zouras.

33.    On November 30, 2020, the *Smiley* court again refused to become involved in the fee dispute between Stephan Zouras and Marrone and entered an order granting Marrone's distribution motion "without prejudice to allowing Cohen and Marrone to pursue their dispute regarding the amount of the counsel fees and costs Marrone should pay Cohen in the appropriate… forum."

34.    That same day, Marrone e-mailed Analytics demanding that it immediately wire the escrowed funds to him and Analytics complied based on the Court's November 30, 2020 Order.

35.    On December 1, 2020, Stephan Zouras wrote Marrone and requested, that he, as mandated by Pa. R.P.C. 1.15(f), promptly tender all amounts to Stephan Zouras that Marrone did not contest and to confirm, as mandated by Pa. R.P.C. 1.15(b), (d) and (f), that he would escrow all contested amounts and confirm this fact to them.

36.    That day, Marrone responded by "disput[ing] that [Stephan Zouras] is entitled to *any lodestar* or *any multiplier*" in *Smiley* and claiming (for the first time) that Stephan Zouras was entitled *no fee whatsoever*, based on the wrongful assertion that "[t]he court did not award any fees to [Stephan Zouras]." *See* December 1, 2018 Marrone E-Mail (emphasis added) (Exhibit D).   Despite the unambiguous requirements of Pa. R.P.C. 1.15, Marrone refused to pay Stephan Zouras any fee, or confirm that he would hold the full value of Stephan Zouras' claimed fee in escrow pending resolution of their dispute.

37.    Since December 1, 2020, Marrone has not: paid Stephan Zouras its *pro rata* share of the $1,750,000.00 Court-awarded attorney's fee in *Smiley*; paid Stephan Zouras any attorney's fee whatsoever for its work on *Smiley*; reimbursed Stephan Zouras' out-of-pocket costs from *Smiley*; provided Stephan Zouras with an

accounting of the attorney's fee and cost payments it received in *Smiley*; or confirmed the value of funds (if any) being held in escrow for Stephan Zouras' benefit.

## COUNT I
## Breach of Contract

38.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

39.     Stephan Zouras and Marrone agreed that Stephan Zouras would participate in *Smiley* as co-class counsel, provide representation on a contingent basis, keep a contemporaneous record of its time and, upon any favorable resolution, seek a reasonable attorney's fee award from the Court corresponding to its time and contributions to the case.   With respect to the sharing of fees and costs, Marrone expressly stated his intention that Stephan Zouras' involvement would "be as favorable to [it] as possible" and "present the most favorable scenario for [it]," necessarily meaning that, Stephan Zouras would receive at least a *pro rata* share of any fee awarded.  *See* July 26, 2018 Marrone E-Mail (Exhibit A).

40.     Stephan Zouras accepted Marrone's offer by undertaking professional responsibilities as co-class counsel in *Smiley,* providing its representation on a contingent basis, keeping a contemporaneous record of the time its attorneys and staff spent on the case.

41.     At final approval, following a favorable resolution and consistent with their agreement, Stephan Zouras and Marrone both prepared declarations supporting their accumulated lodestars and jointly asked the court to approve a lodestar multiplier based on the successful outcome of the litigation.

42.     After the Court approved the *Smiley* settlement and awarded a $1,750,000.00 attorney's fee to Stephan Zouras and Marrone, representing a 1.7x multiplier on their cumulative $1,027,837.50 lodestar, Marrone breached his agreement with Stephan Zouras by taking and refusing to tender at least $573,000.00 to Stephan Zouras, the amount representing its *pro rata* share of the $1,750,000.00 *Smiley* attorney's fee based on its $336,277.50 lodestar.  Instead, Marrone retained exclusive possession and control over the entire $1,750,000.00, including all fees and costs owed to Stephan Zouras.

43.     Stephan Zouras has suffered economic damages as a result of Marrone's breach in that it has been deprived of at least $573,000.00, the amount representing its court-awarded *pro rata* share of the $1,750,000.00 *Smiley* attorney's fee based on its $336,277.50 lodestar.

### COUNT II
### Breach of Fiduciary Duty

44.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

45.   On December 1, 2020, upon receipt of the funds lawfully awarded to Stephan Zouras, Marrone became a fiduciary for Stephan Zouras and owed Stephan Zouras a fiduciary duty with respect to those funds under Pa. R.P.C. 1.15.

46.   Since December 1, 2020, Marrone has breached his fiduciary duty owed to Stephan Zouras by failing to promptly tender any and all amounts Marrone had no *bona fide* basis to contest under Pa. R.P.C. 1.15(f).

47.   Since December 1, 2020, Marrone has failed to act in good faith and breached his fiduciary duty owed to Stephan Zouras by failing to escrow at least $573,000.00, the *pro rata* value of its contested fee as required by Pa. R.P.C. 1.15(b), (d) and (f).

48.   Since December 1, 2020, Marrone has failed to act in good faith and breached his fiduciary owed to Stephan Zouras by failing to notify Stephan Zouras that he was holding in escrow at least $573,000.00, the *pro rata* value of its contested fee and/or render any accounting of the escrowed funds held for Stephan Zouras' benefit as required by Pa. R.P.C. 1.15(d) and (e).

49.   Stephan Zouras has suffered damages as a result of Marrone's breach of fiduciary duty in that it has been deprived of the use of any and all amounts Marrone has no *bona fide* basis to contest and should have promptly tendered consistent with his fiduciary duty to Stephan Zouras under Pa. R.P.C. 1.15.

50.     Stephan Zouras has been further injured by as a result of Marrone's breach of fiduciary duty in that Marrone has not only failed to hold funds owed to Stephan Zouras separately from his own funds, with the care owed by a professional fiduciary as required by Pa. R.P.C. 1.15, but also failed to satisfy the notice and accounting requirements relating to those funds.

51.     Stephan Zouras is entitled to punitive damages to punish Marrone's outrageous conduct and deter Marrone and others from breaching the fiduciary duties clearly promulgated by the Pennsylvania Rules of Professional Conduct with respect to safekeeping the property of others.

## COUNT III
## Fraud

52.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

53.     Marrone solicited Stephan Zouras to participate in *Smiley* as co-class counsel by representing, among other things, that upon any favorable resolution, Stephan Zouras would seek a reasonable attorney's fee award from the Court corresponding to its time and contributions to the case, that Stephan Zouras' involvement would "be as favorable to [it] as possible" and "present the most favorable scenario for [it]," which necessarily meant that Stephan Zouras would receive at least a *pro rata* share of any fee awarded.  *See* July 26, 2018 Marrone E-Mail (Exhibit A).

54.     Marrone's representations were material to Stephan Zouras, because it meant the lodestar it accumulated on *Smiley* would be recovered on at least a *pro rata* basis and would not be not totally overshadowed or diluted by the lodestar Marrone' had been accruing since 2012.

55.     Marrone knew his representations were false – or at least acted recklessly as to the falsity of his statements – because he intended to keep all of the Court-awarded *Smiley* fee for himself, limit Stephan Zouras' fee to no more than the value of its lodestar regardless of any multiplier the Court awarded and believed that he could unilaterally set Stephan Zouras' fee at whatever amount he personally decided was appropriate.

56.     Stephan Zouras, not knowing Marrone's true intentions at the time, justifiably relied on his misrepresentation that it would receive at least a *pro rata* share of whatever fee the Court awarded, agreed to join *Smiley* on a contingent basis, performed a substantial amount of work on the case and was the beneficiary of a Court-ordered attorney's fee that Marrone has received by virtue of his fraudulent representations.

57.     Stephan Zouras has suffered damages as a proximate cause of its reliance on Marrone's fraudulent representations because its attorneys and staff performed more than $336,277.50-worth of work on *Smiley* from July 2018 to present; submitted a fee request in which its lodestar comprised (32.7%) of the total

$1,027,837.50 lodestar; received a final approval order that provided a 100% lodestar recovery plus a 1.7x lodestar multiplier; and Marrone has retained sole possession and control over the entirely of the $1,750,000.00 fee awarded by the Court, including all fees and costs owed to Stephan Zouras.

58.    Stephan Zouras is entitled to punitive damages to punish Marrone's outrageous conduct and deter Marrone and others from engaging in fraudulent representations with respect to fee-sharing arrangements between co-counsel.

## COUNT IV
## Conversion

59.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

60.    The *Smiley* court's October 2, 2020 final approval order awarded a $1,750,000.00 attorney's fee to Stephan Zouras and Marrone.

61.    Stephan Zouras is owed <u>at least</u> $573,000.00 of this fee, representing its *pro rata* share of the cumulative lodestar increased by the court-awarded 1.7x multiplier.

62.    Since December 1, 2020, Marrone has taken sole possession and control of the entire $1,750,000.00 court-approved fee payment, including all fees and costs owed to Stephan Zouras, which Marrone has no legal justification to possess.

63.     Marrone lacks any *bona fide* basis for retaining the entire $1,750,000.00 fee awarded in *Smiley* and, based on their agreement, has no *bona fide* basis to challenge Stephan Zouras' receipt of a fee of <u>at least</u> $573,000.00.  As a result, Stephan Zouras had an immediate, absolute and unconditional right to possess funds totaling <u>at least</u> $573,000.00 upon Marrone's receipt of these funds.

64.     Stephan Zouras has demanded that Marrone tender its *pro rata* share of the $1,750,000.00 *Smiley* attorney's fee, which is at least $573,000.00, based on their agreement.

65.     Marrone wrongfully, and without authorization, has refused and failed to deliver these funds to Stephan Zouras and, instead, has assumed control, dominion and ownership over all of the funds belonging to Stephan Zouras.

**COUNT V**
**(in the alternative to Count I)**
**<u>Unjust Enrichment / Constructive Trust</u>**

66.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

67.     Stephan Zouras conferred a direct and substantial benefit on Marrone by virtue of the extensive work it performed in *Smiley* from July 2018 to present.

68.     At the outset of Stephan Zouras' involvement in *Smiley*, the defendants believed and represented that the plaintiffs' claims were worth no more than

$830,000.00 and should settle for around $400,000.00, which would have provided a (35%) attorney's fee of $150,000.00.

69.     Stephan Zouras' efforts convinced the *Smiley* defendants that the *Smiley* plaintiffs' claims were worth approximately $9,500,000.00 and caused them to settle this action for $5,000,000.00, which resulted in a (35%) attorney's fee of $1,750,000.00.

70.     In a *quantum meruit* analysis reflecting actual, provable events in this case, the work Marrone performed before Stephan Zouras joined *Smiley* was worth up to $830,000.00 (16.6%) and the work Stephan Zouras performed after it joined *Smiley* was worth at least $4,170,000.00 (83.4%).  As a result, under a *quantum meruit* analysis, Marrone should receive 16.6% of the *Smiley* attorney's fee, or $290,500.00 and Stephan Zouras should receive 83.4% of the *Smiley* fee, or $1,459,500.00.

71.     Marrone appreciated (*i.e.,* had knowledge of) the substantial benefit provided by Stephan Zouras in *Smiley* because he was co-class counsel in *Smiley*, attended the attorney conferences and mediation and appears on court filings describing Stephan Zouras' work and the tangible benefits it provided, including with respect to the basis and calculation of the court-awarded attorney's fee.

72.     Marrone has accepted and retained the entire attorney's fee awarded in *Smiley* despite:

a.       agreeing that Stephan Zouras would participate in *Smiley* as co-class counsel on a contingent basis, track its time on the case and seek a fee from the Court upon any favorable resolution corresponding to its time and contributions to the case;

b.       securing Stephan Zouras' participation in the case by promising that, with respect to work, fees and costs, its involvement would be "as favorable to [it] as possible" and "present the most favorable scenario for [it]," necessarily meaning that Stephan Zouras would receive <u>at least</u> a *pro rata* share of any fee awarded; and

c.       receiving a substantial benefit from the work Stephan Zouras performed in *Smiley*, which included increasing the value of the case to Defendants from $830,000.00 to $5,000,000.00 and increasing Plaintiff's counsel's fee award from $150,000.00 to $1,750,000.00;

73.    All of these circumstances demonstrate Stephan Zouras' entitlement to a fee of at least $1,459,500.00, reflecting the *quantum meruit* value of its substantial contributions to *Smiley*.

## COUNT VI
### (in the alternative to Count I)
### <u>*Quantum Meruit*</u>

74.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

18

75.     Stephan Zouras conferred a direct and substantial benefit on Marrone by virtue of the extensive work it performed in *Smiley* from July 2018 to present.

76.     At the outset of Stephan Zouras' involvement in *Smiley*, the defendants believed and represented that the plaintiffs' claims were worth no more than $830,000.00 and should settle for around $400,000.00, which would have provided a (35%) attorney's fee of $150,000.00.

77.     Stephan Zouras' efforts convinced the *Smiley* defendants that the *Smiley* plaintiffs' claims were worth approximately $9,500,000.00 and caused them to settle this action for $5,000,000.00, which resulted in a (35%) attorney's fee of $1,750,000.00.

78.     In a *quantum meruit* analysis reflecting actual, provable events in this case, the work Marrone performed before Stephan Zouras joined *Smiley* was worth up to $830,000.00 (16.6%) and the work Stephan Zouras performed after it joined *Smiley* was worth at least $4,170,000.00 (83.4%).  As a result, under a *quantum meruit* analysis, Marrone should receive 16.6% of the *Smiley* attorney's fee, or $290,500.00 and Stephan Zouras should receive 83.4% of the *Smiley* fee, or $1,459,500.00.

79.     Marrone appreciated (i.e., had knowledge of) the substantial benefit provided by Stephan Zouras in *Smiley* because he was co-class counsel in Smiley, attended the attorney conferences and mediation and appears on court filings

19

describing Stephan Zouras' work and the tangible benefits it provided, including with respect to the basis and calculation of the court-awarded attorney's fee.

80.     Marrone has accepted and retained the entire attorney's fee awarded in *Smiley* despite:

a.     agreeing that Stephan Zouras would participate in *Smiley* as co-class counsel on a contingent basis, track its time on the case and seek a fee from the Court upon any favorable resolution corresponding to its time and contributions to the case;

b.     securing Stephan Zouras' participation in the case by promising that, with respect to work, fees and costs, its involvement would be "as favorable to [it] as possible" and "present the most favorable scenario for [it]," necessarily meaning that Stephan Zouras would receive at least a *pro rata* share of any fee awarded; and

c.     receiving a substantial benefit from the work Stephan Zouras performed in *Smiley*, which included increasing the value of the case to Defendants from $830,000.00 to $5,000,000.00 and increasing Plaintiff's counsel's fee award from $150,000.00 to $1,750,000.00;

67.     All of these circumstances demonstrate Stephan Zouras' entitlement to a fee of at least $1,459,500.00, reflecting the *quantum meruit* value of its substantial contributions to *Smiley*.

20

WHEREFORE, Plaintiff respectfully prays for an Order:

      a.    Granting judgment in its favor on Counts I-VI;

      b.    Awarding compensatory damages in an amount to be determined on Counts I and IV-VI;

      c.    Awarding pre-judgment and post-judgment interest on all compensatory damages due;

      d.    Awarding punitive damages in an amount to be determined on Counts II and III;

      e.    Awarding all available equitable and injunctive relief; and

      f.    Awarding any and all additional relief this Court deems appropriate.

Respectfully Submitted,

Dated: December 15, 2020     */s/ David J. Cohen*
David J. Cohen
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

James B. Zouras (*pro hac vice* forthcoming)
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL  60606
312-233-1550
jzouras@stephanzouras.com

21