## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHAN ZOURAS LLP,** | : | **Civ. No. 3:20-CV-2357** |
| | : | |
| | : | |
| **Plaintiff,** | : | **(Judge Mannion)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **THOMAS MORE MARRONE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM AND ORDER</u>

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

This case, which comes before us for consideration of several discovery disputes, continues to illustrate some of the less attractive aspects of our profession since the adversaries in this litigation, the Zouras and Moremarrone law firms, were once allies in a great litigative victory, in that they were co-counsel for the plaintiff class in <u>Smiley v. E.I. Du Pont De Nemours and Co</u>., Civil No. 3:12-CV-2380. That Fair Labor Standards Act lawsuit concluded with a significant victory for the plaintiffs, a victory which resulted, in part, in an aggregate attorneys' fee award of $1,793,423.00 for all plaintiffs' counsel, a sum which was entrusted to the Moremarrone law firm for disbursement.

One might have thought that these erstwhile legal allies could have found a way to equitably divide nearly $1.8 million in fees, but alas they cannot. Instead, this

1

victory has now turned these attorney allies into adversaries, and this success has spawned bitter strife between counsel. The nature of the dispute that divides formerly allied counsel involves allocation of these legal fees and competing claims for shared paternity of the victory in the <u>Smiley</u> case. In essence, the Moremarrone and Zouras law firms dispute what is the appropriate share of these fees that should be paid to the Zouras firm. In this regard, the plaintiff, Stephan Zouras LLP, contends that it is entitled to fees totaling at least $573,000, representing what it alleges was its *pro rata* share of the entire fees award, as a result of its work in the <u>Smiley</u> case. The defendant, Moremarrone LLC, disagrees with this assessment and has placed a more modest sum, $325,502.70, in escrow for payment to the Zouras firm. According to the Moremarrone firm, this escrowed sum was intended to fairly compensate the plaintiff by setting aside for the Zouras firm a sum of money equal to the amount of the lodestar legal fees claimed by that firm in the fees petitions filed in the <u>Smiley</u> litigation.

It is against this factual backdrop that the plaintiff, the Zouras law firm, filed this action against Attorney Marrone and his law firm, advancing claims of breach of contract (Count I), breach of fiduciary duty (Count II), fraud (Count III), conversion (Count IV), unjust enrichment (Count V), and quantum meruit (Count VI) against Mr. Marrone and his law firm. (Doc. 1).

The parties in this litigation have been engaged in a somewhat contentious

course of discovery. As part of this disputatious discovery, the Marrone defendants challenged the assertion of attorney-client and work product privileges by the plaintiffs with respect to some 136 emails comprising 744 pages of material. (Docs. 42-44). It should be noted that the plaintiffs represent, without contradiction, that they have produced 73,226 pages of material in response to the defendants' discovery demands. Thus, these disputed privileged documents constitute only 0.002% of the responsive documents identified by the plaintiffs.

In order to resolve this dispute in an informed fashion, in June of 2022, we directed the plaintiff to provide us with a privilege log as well as copies of the disputed documents for our *in camera* review. (Doc. 49). The plaintiff complied with this directive and we have now completed our document review.

In the meanwhile, a collateral discovery dispute erupted between the parties which was tangentially related to this privilege review discovery question. The parties are embroiled in a contest regarding the scheduling of deposition, which now comes before us through the defendants' motion to compel depositions. (Doc. 64). As we understand it, this motion seeks two forms of relief: First, it asks that we compel Ryan Stephan to sit for a deposition in this matter. Second, this motion also requests that, if we order the release of documents previously designated as privileged by the plaintiff, that we compel several witnesses to sit for supplemental depositions. (Id.)

Having completed our *in camera* review of the documents tendered by the plaintiff we conclude that all of these records have correctly been identified as materials cloaked in the attorney client or work product privileges. Therefore the request to compel further production of these materials which have properly been designated as privileged is DENIED.

This ruling, in turn, leads us to DENY the motion to compel further depositions in this case. (Doc. 64). At the outset, to the extent that the motion requested that, if we ordered the release of documents previously designated as privileged by the plaintiff, we should compel several witnesses to sit for supplemental depositions, this request is MOOT in light of our decision upholding the privilege designations made here.  Second, to the extent that the motion asks that we compel Ryan Stephan to sit for a deposition in this matter, the materials before us indicate that Mr. Stephan was excused from sitting for a deposition. (Doc. 68). Therefore, we will not compel the appearance of this excused witness.

So ordered this 31st day of August 2022.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

4