## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHAN ZOURAS LLP,** | : | **Civ. No. 3:20-CV-2357** |
| | : | |
| | : | |
| **Plaintiff,** | : | **(Judge Mannion)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **THOMAS MORE MARRONE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER

### I.    Factual Background and Procedural History

This case, which comes before us for consideration of a motion to compel, continues to illustrate some of the less attractive aspects of our profession since the adversaries in this litigation, the Zouras and Moremarrone law firms, were once allies in a great litigative victory, in that they were co-counsel for the plaintiff class in Smiley v. E.I. Du Pont De Nemours and Co., Civil No. 3:12-CV-2380. That Fair Labor Standards Act lawsuit concluded with a significant victory for the plaintiffs, a victory which resulted, in part, in an aggregate attorneys' fee award of $1,793,423.00 for all plaintiffs' counsel, a sum which was entrusted to the Moremarrone law firm for disbursement.

One might have thought that these erstwhile legal allies could have found a way to equitably divide nearly $1.8 million in fees, but alas, they cannot. Instead,

this victory has now turned these attorney allies into adversaries, and this success has spawned bitter strife between counsel. The nature of the dispute that divides formerly allied counsel involves allocation of these legal fees and competing claims for shared paternity of the victory in the <u>Smiley</u> case. In essence, the Moremarrone and Zouras law firms dispute what is the appropriate share of these fees that should be paid to the Zouras firm. In this regard, the plaintiff, Stephan Zouras LLP, contends that it is entitled to fees totaling at least $573,000, representing what it alleges was its *pro rata* share of the entire fees award as a result of its work in the <u>Smiley</u> case. The defendant, Moremarrone LLC, disagrees with this assessment and has placed a more modest sum, $325,502.70, in escrow for payment to the Zouras firm.

It is against this factual backdrop that the plaintiff, the Zouras law firm, filed this action against Attorney Marrone and his law firm, advancing claims of breach of contract (Count I), breach of fiduciary duty (Count II), fraud (Count III), conversion (Count IV), unjust enrichment (Count V), and quantum meruit (Count VI) against Mr. Marrone and his law firm. (Doc. 1). The parties in this litigation have been engaged in a somewhat contentious course of discovery. As part of this disputatious discovery, the plaintiff has filed a motion to compel, (Doc. 61), which seeks more fulsome responses to discovery requests relating to documentary support for the work done by the defendants in the <u>Smiley</u> litigation. Given the essential nature of this dispute, which involves rival claims to a portion of these attorneys'

fees, it is hardly surprising that the parties have engaged in substantial reciprocal discovery seeking production of documents supporting the litigants' respective fee claims. In fact, the plaintiff has alleged, without contradiction by the Marrone defendants, that they have produced 73,226 pages of material in response to the defendants' discovery demands.

Having made these disclosures, the plaintiff now seeks to compel further reciprocal responses from the defendants to two of their outstanding discovery demands. First, the plaintiff seeks further responses to Request for Production 11, which sought:

> All DOCUMENTS, including time records, supporting the fee petition YOU submitted in the Smiley case.

In addition, in this motion to compel, the plaintiff sought information pertaining to a separate fees dispute between Mr. Marrone and another law firm arising out of the Smiley litigation. Specifically, the motion requests that the defendants provide a more complete production in response to request for Production 14 which demanded:

> ALL declarations, affidavits, depositions or other sworn testimony by YOU in the matter captioned Greenblatt, Pierce Funt & Flores, LLC, v. Marrone, et al., Case ID No. 200901437, pending in the Philadelphia Court of Common Pleas.

In support of this motion to compel, the plaintiff cites a singular circumstance. The Smiley litigation spanned some nine years, from 2012 through 2020. The

defendants have resisted the plaintiff's fee claims by asserting frequently and vehemently that the vast bulk of the legal work in this case was undertaken by the defendants prior to the plaintiff law firm participating in this case. Yet, according to the plaintiff:

> Although Marrone's defenses to Plaintiff's claims rely almost entirely on the amount, quality and value of work he claims to have performed in Smiley from 2012 to 2018, the vast majority of his production consists of post-2018 pleadings that Plaintiff drafted and his post-2018 communications with Plaintiff about the <u>Smiley</u> case. In fact, Marrone only produced a total of 13 pre-2018 documents, namely:
>
>> - six pleadings (the Complaint and Amended Complaint, the Named Plaintiffs' consent forms, a fact stipulation, the trial court's summary judgment opinion and the Third Circuit's opinion);
>>
>> - six DuPont time and pay policies; and
>>
>> - The case cost report of his former firm (Greenblatt, Pierce, Funt & Flores, LLC).

(Doc. 61-2, at 4-5).

The Marrone defendants have responded to this motion to compel, asserting that the information sought by the plaintiff is both irrelevant and the scope of the requests is unduly burdensome. This motion to compel is fully briefed and is, therefore, ripe for resolution.

For the reasons set forth below, the motion to compel will be granted.

II.   **Discussion**

Rulings regarding the proper scope of discovery are matters consigned to the

court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997).   When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)).  Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

(b) Discovery Scope and Limits.

(1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Accordingly, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("Although the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits. . . . Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Therefore, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin

and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus, we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the

party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery, (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

Judged against these benchmarks, we have little difficulty concluding that the information sought here is relevant and discoverable. At bottom, this case is a contractual and equitable attorneys' fees dispute between rival claimants. Given the nature of this contest, there is an undeniable and quantifiable aspect to this litigation which turns on the number of hours committed by both firms to the successful outcome of the Smiley litigation. A fact-finder will necessarily have to consider the hours worked on this lawsuit by these competing claimants, along with the nature and quality of that work, as part of any fair resolution of the case. In light of the obvious relevance of this evidence, all parties should be permitted to thoroughly examine the degree to which hours claimed by counsel have contemporaneous documentary support.

For his part, Mr. Marrone attempts to avoid the ineluctable logic of this position by arguing that the total fee award in the Smiley case was calculated on the "percent of recovery" approach, which is not directly tied to the number of hours

worked by counsel. Therefore, the Marrone defendants suggest that proof of the accuracy of their hours claimed in this case is largely irrelevant.

We disagree. To be sure, in FLSA settlements it is well established that:

> The percentage of recovery method is generally preferred under the common fund doctrine. Keller, 2014 WL 5591033, at *14 (citing In re Prudential, 148 F.3d at 333). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." Cendant II, 404 F.3d at 187 (quoting In re Gen. Motors, 55 F.3d at 820 n. 20). "Further, the percentage of recovery method is the prevailing methodology used by courts in the Third Circuit for wage and hour cases." Keller, 2014 WL 5591033, at *14; see also DiClemente v. Adams Outdoor Adver., Inc., No. 3:15-0596, 2016 WL 3654462, *4 (M.D. Pa. July 8, 2016) (same)

Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2021 WL 720359, at *5 (M.D. Pa. Feb. 24, 2021). However, the defendants' argument that it follows from this proposition that the accuracy of, and support for, their billing statements is totally irrelevant to the instant fee dispute misses the mark on at least two scores.

First, this argument conflates legal concepts. In FLSA litigation, the percent of recovery method is used to ascertain the reasonableness of an *aggregate* fee award. In this case, no one is disputing the reasonableness of the aggregate award for all class counsel. Rather, the parties' current squabble relates to the distribution of this award *between* what are now warring legal factions within the Smiley plaintiffs' legal team. The percent of recovery method sheds no meaningful light on

this issue. Therefore, it does not preclude discovery of evidence which may help inform a decision on this question of the relative contributions and sweat equity expended by all counsel in the <u>Smiley</u> litigation.

In any event, even if we concluded that the percent of recovery method of calculating fees had some marginal relevance here, we would still be constrained to agree that ascertaining the accuracy of the hours of work claimed by counsel is still relevant and discoverable. We reach this conclusion because:

> The Third Circuit has stated that "it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method." <u>In re Rite Aid Corp</u>., 396 F.3d at 305 (citing <u>In re Prudential</u>, 148 F.3d at 333). The lodestar crosscheck is performed by calculating the "lodestar multiplier," which is determined by dividing the requested fee award by the lodestar. <u>In re AT & T Corp</u>., 455 F.3d 160, 164 (3d Cir. 2006). To determine the lodestar method's suggested total, the court multiplies "the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services." <u>In re Rite Aid Corp</u>., 396 F.3d at 305.

<u>Lawson</u>, 2021 WL 720359, at *6. Since the lodestar cross check is a "sensible" part of any percent of recovery analysis, it follows that the completeness and accuracy of lodestar data, including the number of hours worked by counsel, remains relevant to this fees determination. Since this information is relevant, it is subject to discovery.

Having addressed Marrone's relevance objection, we now turn to consideration of the issues of proportionality and burdensomeness raised by the defendants. On this score, the defendants contend that:

> It would be extremely burdensome and disproportional to any need in this case for Defendants to be required to shift through years-upon-years of emails and other records spanning nearly a decade and Defendant Marrone's time at three separate law firms. For instance, as of the date of this filing, searching MOREMARRONE's email server for these records would require sifting through over 122,000 emails to determine which relate in some way to the <u>Smiley</u> litigation.

(Doc. 63-1, at 3-4).

Once again, we are constrained to disagree. Rather than being disproportional, this requested discovery seems to be appropriately tailored to the issues in this litigation. As we have noted "the instant case is somewhat akin to an attorneys' fee dispute involving competing claims of paternity for the victory in the <u>Smiley</u> litigation." <u>Stephan Zouras LLP v. Marrone</u>, No. 3:20-CV-2357, 2021 WL 5154159, at *1 (M.D. Pa. June 9, 2021), <u>report and recommendation adopted sub nom. Stephen Zouras, LLP v. Marrone</u>, No. CV 3:20-2357, 2022 WL 107186 (M.D. Pa. Jan. 11, 2022). Given the nature of the parties' dispute, a thorough examination of the documentary support for these fees and legal paternity claims is not only proportional; it is necessary.

Further, the burden of this discovery is directly related to the scope of the controversy before us, a fees dispute in which hundreds of thousands of dollars hang in the balance. To the extent that the defendants wish to retain these considerable sums based upon their claim of vastly superior sweat equity in the <u>Smiley</u> case, it is incumbent upon them provide necessary documentary support for that sweat equity

claim in the course of discovery. Undertaking such a responsibility is both fair and proportionate given the stakes in this litigation.

The reciprocal discovery sought by the plaintiff is also directly proportional to the discovery they have already produced in support of their claims. In this regard, it seems undisputed that the plaintiff has produced more than 73,000 pages of material in discovery to support its claims. Given this substantial production, the plaintiff is justified in requesting that the Marrone defendants also be required to produce more than 13 documents to justify the hours they claim to have devoted to the Smiley litigation over a six-year period from 2012 through 2018. Thus, by all of these measures, these discovery demands are proper and proportional.

As for the defendants' assertion that "searching MOREMARRONE's email server for these records would require sifting through over 122,000 emails to determine which relate in some way to the Smiley litigation," (Doc. 63-1, at 3-4), the ready rejoinder to this concern is that with respect to electronically stored information (ESI), like emails, we no longer live in a primitive legal environment where a laborious manual review of documents is necessary. As we have noted in this regard:

> Advancements in technology now enable us to collect, retain, analyze and review electronically stored information (ESI) on a scale which was unimaginable a generation ago. These technological advances, however, create a challenge for parties who become engaged in litigation: How do parties conduct civil discovery and assess questions

12

of relevance and privilege when presented with the staggering volume of ESI which many large organizations routinely collect and retain?

To meet this challenge, the Sedona Conference has developed a series of guiding tenets, the Sedona Principles, which describe best practices in this field. See the Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Production, 19 Sedona Conf. J. 1 (2018). The Sedona Principles embrace 14 specific tenets,[1] marked by several overarching guiding concepts. First, the Sedona Principles recognize that the technological advances that enable us to store countless pieces of data electronically do not alter the legal obligations of parties in discovery. Therefore, parties must still follow the principles embodied in Federal Rules of Civil Procedure when preserving, collecting, evaluating, and disclosing ESI. Id. Principles 1, 2. However, the sheer volume of this data imposes special duties and obligations on litigants. Foremost among these obligations is a duty to work in a cooperative and collaborative fashion to devise discovery strategies which allow of the transparent disclosure of relevant evidence that is not cloaked in any claim of privilege. Indeed, the Sedona Principles' injunction that parties should collaborate in conducting electronic discovery underscores that cooperation is the keystone to any successful ESI discovery strategy. Id. Principles 3-12.

The Sedona Principles then identify two specific, collaborative strategies which, when employed by litigants, enhance the fairness and transparency of voluminous ESI discovery review: The use of relevant search terms or technology assisted review to cull ESI and on-going sampling of data to assess the accuracy of search term searches. Id. at 164-67. This process, however, places reciprocal responsibilities on all litigants. First, for requesting parties, it is clear that discovery requests for electronically stored information should be as specific as possible. This duty of specificity applies to the formulation of search terms to be used in ESI searches. These search terms should be tailored to the needs of the case and designed to capture that which is relevant without burdening parties with excessive, irrelevant data. For responding parties, there is a corresponding duty to ensure the accuracy of searches by cooperating in sampling techniques that allow the parties to revise their searches to locate that which is

> relevant, protect that which is privileged, and exclude that which does
> not pertain to the parties' dispute.

Lawson, No. 1:17-CV-1266, 2019 WL 7102450, at *1–2. In sum, through the application of the Sedona principles, including collaborative efforts to identify relevant search terms for the evaluation of emails and other ESI, the parties can mitigate the burden of this discovery to a significant degree. Once a body of relevant data has been identified through this process, appropriate privilege claims can be made and addressed. At this juncture, the parties can also, in a fully informed fashion, make a judgment regarding whether they wish to try to resolve this dispute.

We commend these best practices to all parties, and anticipate that through the application of these principles, fair, proportional, and appropriate discovery can be completed in a timely manner.

### III.   __Conclusion__

Accordingly, for the foregoing reasons, the plaintiff's motion to compel will be GRANTED. An appropriate order follows.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: September 1, 2022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEPHAN ZOURAS LLP,** | : | **Civ. No. 3:20-CV-2357** |
| | : | |
| | : | |
| **Plaintiff,** | : | **(Judge Mannion)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **THOMAS MORE MARRONE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

AND NOW, this 1st day of September 2022, upon consideration of Plaintiff's Second Motion to Compel, (Doc. 61), and in accordance with the accompanying Memorandum, it is hereby ORDERED that this motion is GRANTED and the defendants shall make a full and complete production of documents responsive to Plaintiff's First Document Requests 11 and 14 within thirty days. To the extent that compliance with this order entails a search of electronically stored information, the parties are ORDERED to engage in the collaborative process outlined by the Court, consistent with the Sedona principles. IT IS FURTHER ORDERED that on or before **September 14, 2022**, the parties shall meet, confer, a provide the court with a proposed stipulated order setting a timetable for the completion of discovery and filing of any potentially dispositive motions. In the alternative, at that time the parties may jointly request that the court schedule further

15

mediation of this dispute, but only if all parties agree that mediation would be useful.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge